# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ROGER TODD VACTOR, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 1:16-27ERIE |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL OVERMYER, et al, | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

**Relevant Procedural History**

This civil action was filed in this Court on February 4, 2016. Plaintiff, an inmate incarcerated at the State Correctional Institution at Forest, brings this action against Defendants Superintendent Michael Overmyer, Correctional Officer Jason Reed, Correctional Officer James, Correctional Officer P.D. Means, Correctional Officer Paul Winger, Correctional Officer J.W. Barger, Correctional Officer R.A. Johnson, and Correctional Officers John Doe 1-3.

On February 22, 2014, Plaintiff and another inmate were involved in an altercation. Plaintiff alleges that Defendant James, a correctional officer trying to intervene to stop the altercation, used excessive force against him; that the Correctional Officer Defendants failed to intervene to stop James' excessive use of force; and that Defendant Overmyer, in his capacity as Warden of the facility, is responsible for the operation of SCI Forest, as well as the welfare of the individual inmates.

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. ECF No. 5; ECF No. 14.

1

Defendants filed a motion for summary judgment [ECF No. 45] and Plaintiff filed a brief in opposition [ECF No. 61]. This motion is fully briefed and is ripe for disposition by this Court.

**Standards of Review**

    **1)** *Pro Se* **Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

    **2) Motion for summary judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is

2

entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587. Importantly, however, in a case such as this one where there are video recordings of the incidents in question, the Court need not adopt the non-movant's

version of the facts if the recording "blatantly contradict[s]" the non-movant's version "so that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007).

**The Allegations of the Complaint**

Plaintiff alleges that on February 22, 2014, he and Inmate Gerald Alstin were involved in a physical altercation in which Defendant Correctional Officer James intervened. In doing so, James jumped on Plaintiff's back, applying a chokehold around Plaintiff's neck. All three men fell to the ground with James still on Plaintiff's back applying the chokehold. ECF No. 3, ¶¶ 32-34.

Correctional Officers Reed, Means, Winger, and Barger responded to the altercation and separated the two inmates. These officers pulled Plaintiff, with James still attached on his back, under the stairs and tried to restrain and cuff him. Id. at ¶¶ 35-40. These officers told Plaintiff to stop resisting because Alstin was restrained and in custody. Id. at ¶ 41. Plaintiff then stopped resisting and was handcuffed. Id.

Ten seconds later, Plaintiff looked up to see Alstin standing directly over top of him. Id. Alstin then re-engaged in the assault upon Plaintiff while Plaintiff was handcuffed and restrained and still in the chokehold of Correctional Officer James. Id. at ¶¶ 43. Alstin punched Plaintiff in the face several times and scratched him, digging his nails deeply into Plaintiff's face, head, and ears. Id. at ¶ 44. Officers Reed, Means, Winger, and Barger watched the brutal assault take place and did nothing to stop it. Additionally, Correctional Officers Johnson and John Does 1-3, who were responsible for restraining and cuffing Alstin, did nothing. Id. at ¶ 45. Alstin then got down

4

on his hands and knees and started barking at Plaintiff, and then tried to bite Plaintiff's face, ears, and head. Id. at ¶ 48. Again, the correctional officers did nothing. Id. at ¶ 49.[2]

Other officers responded to the scene and Alstin was restrained and removed from the block. Id. at ¶¶ 50-51. Correctional Officer James continued to apply the chokehold to Plaintiff and Plaintiff yelled for James to "get off my neck." Id. at ¶ 52. Defendant Means told James to get off of Plaintiff's neck and that he was supposed to have grabbed Plaintiff around the limbs, not around the neck. Id. at ¶ 53.

As a result of this assault, Plaintiff suffered injuries to his head, face, nose, neck and left shoulder. Id. at ¶¶ 57, 60. Plaintiff has a scar on the back of his neck and head. Id. at ¶ 58. Plaintiff still suffers from severe headaches. Id. at ¶ 61.

**The videotape evidence**

In support of the motion for summary judgment, Defendants have submitted a DIVAR video recording of the altercation. ECF No. 48-1.[3] The recording does not depict events leading up to the confrontation between the two inmates. The video recording first captures the altercation when the three men (Alstin, Plaintiff, and James) are already on the ground, with not more than thirty seconds having elapsed since the beginning of the altercation.[4] In the pile,

---

[2] In addition to his own declaration in support of his complaint, Plaintiff has attached the declarations of fellow Inmates Timothy Charity, Richard Celinski, Jr., James Knight, Antonio Warner, Jason West, and James Troutman. All witnesses recount Alstin's re-engagement of the assault while Plaintiff was handcuffed and restrained.

[3] Lt. Douglas Dickey has provided a declaration that the video "is the full and complete video that was captured by the recrdoing camera between the timeframes indicated on the video." ECF No. 49-1, page 2.

[4] Thirty seconds earlier the camera had panned past the same area and no activity was shown. Id. at 7:00:40.

5

Inmate Alstin is on the bottom, Plaintiff is in the middle, and Officer James is on top. Id. at 7:01:12.

Seconds after the camera focused on the altercation, Sgt. Johnson arrived and attempted to separate Alstin and Plaintiff. Id. at 7:01:16. A third and fourth officer arrived a few seconds later and helped to separate the inmates. Id. at 7:01:22-7:01-32. At 7:01:40, the inmates were separated. More officers continued to respond to get both inmates restrained after they were separated. Id. at 7:01:55, 7:02:18. A total of nine staff members responded and were actively engaged in subduing and restraining the inmates. Both inmates continued to resist for several minutes. Four officers worked together to subdue Plaintiff while five other officers were able to restrain Alstin.

Once the inmates were separated, at no time did Alstin free himself and continue the assault on Plaintiff. The inmates, who had been separated continuously since they were pulled apart at 7:01:40, were led away from each other and off the block at 7:04 (Alstin) and 7:06 (Plaintiff).

The DIVAR recording runs continuously, without break, from 6:59:58 until 7:07:01, at which time both inmates have been escorted off the block. The recording shows that once the two inmates are separated, there is no further physical contact between the two men. Although the camera's view of Plaintiff is partially obstructed by the stairway, the recording clearly shows Alstin from the moment he is separated from Plaintiff until he is standing and escorted off the block. During the entire recording, Alstin does not re-engage in the altercation with Plaintiff. The evidence conclusively shows there is no second assault by Alstin on Plaintiff.

In a case such as this one where there is a video recording of the incident in question, the Court need not adopt the non-movant's version of the facts if the recording "blatantly contradict[s]" the non-movant's version "so that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007). See also Shreve v. Franklin Cnty., Ohio, 743 F.3d 126, 132 (6th Cir. 2014) (stating "that witness accounts seeking to contradict an unambiguous video recording do not create a triable issue."); Fennell v. Cambria County Prison, 607 Fed.Appx 145, 148 (3d Cir. 2015) quoting Scott, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); Angle v. Dickey, 2014 WL 7183360 (W.D. Pa. Dec.16, 2014).

**The Excessive Force Claim**

Plaintiff alleges that Defendant James violated his Eighth Amendment rights by using excessive force against him during James' intervention in the altercation. In his deposition, Plaintiff clarifies his claim against Defendant James:

> The reason why I filed a suit against CO James, because – CO James, he prevented me from defending myself. ... He showed a deliberance [sic] – difference toward my safety when he jumped on my back and he placed me in a chokehold. And then he continued the chokehold from the time that I went to the floor, from the time that officers came in. From the time that the man was assaulting me, he was still applying the chokehold on me.
> \* \* \*
> I'm saying he used excessive force. Because the chokehold was not – it was not warranted. Because I wasn't assaulting him, I was protecting myself.
> \* \* \*
> Then he continued the force when I was cuffed, when I cooperated. ... And that's the only reason why I said CO James prevented me from protecting myself, and then he – except for the chokehold. I mean, was choking me – he was trying to choke me out. And that chokehold went on for a good two, three minutes.

ECF No. 48-5, pages 30-32.

Defendants move for summary judgment on this claim arguing that Defendant James used the amount of force necessary to restore order.

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000). The inquiry for an excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Giles v. Kearner, 571 F.3d 318, 326 (3d Cir. 2009) quoting Whitley v. Albers, 475 U.S. 312, 319 (1986). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.

In making this determination, courts are tasked with evaluating the following Whitley factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Id. citing Whitley, 475 U.S. at 321. The application of the Whitley factors to any given case is necessarily fact specific.

In support of their motion for summary judgment on this claim, Defendants have submitted written documentary evidence, as well as the DIVAR video recording. Defendants argue that the video conclusively proves that James did not exert excessive force in the situation he was faced with. After a complete screening of the entire video evidence of record, along with the documentary evidence presented, this Court agrees with Defendants' view.

8

There was a need for the application of force here. Two inmates were engaged in a full-blown altercation. ECF No. 48-1. Defendant James had attempted to diffuse the situation between Plaintiff and Alstin before it became physical and that attempt failed. ECF No. 48-5, pages 15-17. Moreover, the threat to the safety is clear from the video recording. It took nine officers to subdue and restrain the two fighting inmates.

Officer James was initially the only staff member in the vicinity and was standing in between the two inmates when Alstin reach across James and poked Plaintiff hard in the face and when Plaintiff responded by throwing the first punch. ECF No. 48-5, page 16. Plaintiff admits that he pushed James out of the way in order to better reach Alstin. Id. James' actions of jumping on Plaintiff's back and using a chokehold to subdue him and break up the fight are not unreasonable. However, continuing the chokehold after both inmates were restrained may have been disproportionate to the amount of force needed.

While Plaintiff suffered some injuries, they were slight. There is no evidence that Plaintiff's injuries were a direct result of the force used by Defendant James rather than the blows landed by Alstin.

Considering all of the evidence, Defendant James is entitled to summary judgment as there is no evidence that demonstrates that he applied force to maliciously and sadistically cause harm, rather than in a good faith effort to maintain and restore discipline. See Goldsmith v. Franklin Cty., 2016 WL 8252652, at *7 (M.D. Pa. Dec. 2, 2016) (internal citations omitted) ("Moreover, in the context of prison excessive force claims, in determining whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused ..., any such over-reaction would still fall short of

9

supporting a finding that prison officials acted maliciously and sadistically to cause harm.") report and recommendation adopted, 2017 WL 559577 (M.D.Pa. Feb. 10, 2017).

**The Failure to Intervene Claim**

Plaintiff claims that the Correctional Officer Defendants violated his constitutional rights by not intervening in the alleged excessive use of force by Defendant James.

A prison staff member has "a duty to take reasonable steps to protect a victim from another officer's use of excessive force[.]" Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (internal quotation omitted). In a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the inmate must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. Smith, 293 F.3d at 650-51.

Because Defendants have demonstrated that there was no excessive use of force, there can be no failure to intervene. Without an underlying finding of the excessive use of force, there can be no failure to protect claim. Nifas v. Coleman, 528 Fed. App'x 132 (3d Cir. 2013). See also Wardell v. City of Erie, 2015 WL 6134014 (W.D. Pa. Oct. 16, 2015) ("If there is no excessive force, then there is no corresponding duty to intervene.").

Alternatively, summary judgment will be granted to the Correctional Officers as the evidence shows that none of them had an opportunity to intervene to stop James' chokehold on Plaintiff. The DIVAR recording clearly shows that it took multiple correctional officers to pull Alstin and Plaintiff away from each other and to subdue and restrain each man. At least four correctional officers were laying on top of each inmate. Each correctional officer was completely

engaged with the task at hand and had no opportunity to do anything more than what he was already doing in order to restore order.

**The Claim against Defendant Warden Overmyer**

As to Defendant Overmyer, Plaintiff makes very few factual allegations in his complaint. In his deposition, Plaintiff clarifies the basis of his claim against Defendant Overmyer. Overmyer denied Plaintiff's grievance appeal and failed to punish any officers for their conduct during the altercation. Moreover, Plaintiff explained that Warden Overmyer is "the facilitator of this facility and he's responsible for the operations of the prison and the welfare of all the inmates." ECF No. 48-5, Plaintiff's Deposition, page 43.

To establish a § 1983 claim, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. Additionally, each defendant in a civil rights action "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" Rode v. Dellacriprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct.21, 2013) citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only

liable for his or her own misconduct."); Oliver v. Beard, 358 Fed.App'x 297, 300 (3d Cir. 2009); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." Chinchello, 805 F.2d at 133; Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990) cert. denied, 501 U.S. 1218 (1991). Section 1983 liability cannot be predicated solely on the theory of *respondeat superior.* Rizzo v. Goode, 423 U.S. 362 (1976). See also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's actions); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-95 (3d Cir. 1997) (holding that § 1983 plaintiff is required to show that supervisor personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

In the context of a defendant who is alleged to have performed in a supervisory role, courts have identified two general instances in which either the conduct of that supervisor-defendant or the policies/procedures of that supervisor-defendant may amount to personal involvement and thereby warrant a finding of individual, supervisory liability for a constitutional tort: First, supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Second, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which

directly caused [the] constitutional harm." Id., quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). In this second type of supervisory liability, a plaintiff must show four elements: 1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; 2) the defendant-supervisor was aware that the policy created an unreasonable risk; 3) the defendant-supervisor was indifferent to that risk; and 4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

Here, Plaintiff's allegations against Defendant Overmyer, even viewed in the light most favorable to Plaintiff, fail to state a claim under either theory of supervisory liability.[5] Summary judgment will be granted in favor of Defendant Overmyer.

An appropriate order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: March 26, 2018

---

[5] The denial of Plaintiff's grievances does not, in itself, satisfy the requisite "personal involvement" requirement. Mincy v. Chmielsewski, 508 Fed.App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); Rogers v. United States, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.").

13